1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9

10   REDAPT INC.,

11                        Plaintiff,                    CASE NO. 2:20-cv-00862-JRC

12          v.                                          ORDER GRANTING MOTION
                                                        FOR TEMPORARY RESTRAINING
13   PETER PARKER,                                      ORDER

14                        Defendant.

15

16          Plaintiff Redapt, Inc. ("Redapt"), a technology services business, brings suit against

17   defendant Peter Parker ("Parker"), a former employee, under federal law for allegedly copying

18   Redapt's customer relations management ("CRM") database without authorization before Parker

19   resigned his employment with Redapt.

20          Before the Court is Redapt's motion for a temporary restraining order ("TRO") against

21   Parker on the basis that Parker intends to disclose Redapt's CRM database to a competitor in

22   direct violation of a non-disclosure agreement in Parker's employment contract.  Among other

23

24

things, Redapt seeks an order restraining Parker from using or disclosing this confidential information.

The Court grants the TRO with the revisions set forth in this Order. Parker is enjoined from using or disclosing confidential information belonging to Redapt, as discussed herein, and shall preserve all documents, devices, and materials relevant to the allegations in the Complaint. The Order also applies to Parker's agents, servants, employee, attorneys, and other persons who may be in active concert or participating with him in relation to the subject matter of this Order and who receive actual notice of this order. The TRO will expire fourteen days from the date that this Order is entered. Parker is further ordered to show cause why a preliminary injunction should not issue. A hearing on the request for a preliminary injunction is set for March 22, 2020.

## BACKGROUND

### I. Underlying Events[1]

According to Brent Malmstrom (Redapt's Chief Financial Officer and Chief Operating Officer), in 2018, Redapt, which specializes in providing resources to build data center infrastructure and in implementing cloud computing solutions, purchased assets of another cloud-based service provider in order to expand Redapt's business. Dkt. 5, at 1–2. This included purchase of the CRM database, which, by 2020, contained "eight years of highly valuable, highly confidential trade secret information regarding Redapt's customers and projects"—information valued at tens of millions of dollars. Dkt. 5, at 2.

---

[1] The account of events in this subsection is taken from affidavits and documents provided in support of Redapt's request for a TRO.

1    Parker and three majority owners of the purchased company began working for Redapt.

2  Dkt. 5, at 2.  Parker lead the "cloud-based services technical team providing cloud-based services

3  to Redapt's clients" and was "one of a few Redapt employees who had administrative rights to

4  the CRM database."  Dkt. 5, at 3.  As such, he executed an agreement with Redapt not to disclose

5  their confidential information during or after employment and not to work for Redapt

6  competitors or solicit Redapt customers after employment.  Dkt. 5, at 3–4; *see also* Dkt. 5-2, at

7  1–2.

8    In April 2020, Redapt terminated the former majority owners and on May 12, Parker sent

9  Malmstrom and Redapt's owners a "strongly worded email" that "acknowledged his intent and

10  desire to end his relationship with Redapt."  Dkt. 5, at 4; *see also* Dkt. 5-3, at 1.  Malmstrom

11  states that he later learned that at the time, Parker was meeting with a competitor of Redapt—a

12  competitor who had previously hired a former Redapt employee.  Dkt. 5, at 5–6.  Malmstrom

13  scheduled a May 20 meeting with Parker, at which Parker resigned.  Dkt. 5, at 5–6.

14    Redapt's IT manager, Jason Morgan, then learned that on May 17, Parker had accessed

15  the CRM database and downloaded a copy without returning the copy and with the audit

16  function of the database disabled, meaning that detection of the activities was prevented.  Dkt. 5,

17  at 5; Dkt. 6, at 2.  According to Morgan, "[a] copy of the database had clearly been exported

18  from Redapt's systems."  Dkt. 6, at 2.  According to Redapt's attorney Marcia Ellsworth, Parker

19  later provided conflicting accounts of why he had downloaded and copied the CRM database and

20  provided no explanation of why the audit feature was disabled.  Dkt. 5, at 6–7; Dkt. 6, at 3; Dkt.

21  7-3, at 1.

22    Attorney Ellsworth then requested that Parker turn over his computer for imaging by

23  Redapt's expert, which Parker refused to do under circumstances acceptable to Redapt.  Dkt. 7,

24

at 2.  Specifically, Parker requested that a neutral third-party expert inspect the computer and that Redapt provide a list in advance of specific items to be searched for based on the agreement of the parties.  Dkt. 7-7.  On June 5, 2020, Malmstrom learned that Parker had scheduled another meeting with the competitor, and Redapt sent a cease and desist letter.  Dkt. 5, at 7.

## II.  Complaint and TRO

On the same day, June 5, 2020, Redapt brought suit in this Court against Parker, seeking injunctive relief and damages.  *See* Dkt. 1.  Redapt alleges violation of the federal Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836, as well as state law claims for misappropriation of confidential information (ch. 19.108 RCW), breach of duty of loyalty and confidential relationship, conversion, and breach of contract.  *See generally* Dkt. 1.

On June 9, 2020, Redapt filed a motion for a TRO.  *See* Dkt. 4.  Redapt's counsel has since filed an affidavit explaining the efforts that Redapt has made to provide notice of the TRO to Parker.  First, Redapt's counsel emailed notice of the TRO to an attorney who he believed represented Parker.  *See* Dkt. 13, at 2.  She informed Redapt that she was no longer representing Parker.  *See* Dkt. 13, at 2.  That same day, June 9, 2020, Redapt's counsel sent the TRO motion directly to Parker's email address.  Dkt. 13, at 2.  The next day, Redapt's counsel arranged for a process server to serve Parker at his home, but, despite making two attempts, the process server was unable to serve Parker.  Dkt. 13, at 2–3.

By referral from this Court, Magistrate Judge J. Richard Creatura held a telephonic hearing in this matter on June 11, 2010, in which Redapt's counsel participated.  Dkt. 16.  At the hearing, Redapt's counsel cited the unsuccessful efforts to serve Parker with the TRO and indicated that Redapt now seeks entry of an *ex parte* TRO as authorized by Federal Rule of Civil Procedure 65(b).

1

### III. TRO Relief Requested and Supporting Documents

2          In the Motion for TRO, Redapt requests that Parker be enjoined from disclosing or using

3  Redapt's "confidential information and trade secrets" and that Parker be required to—

4          immediately deliver to [Redapt's] counsel or to the Court, or to make available for
           pickup, as the Court may deem appropriate, the work computer or other electronic
5          device used to access Redapt's database and to communicate with Redapt's former
           employees and competitors . . . as well as all of Parker's external storage devices,
6          handheld devices, together with access passwords for each such device, if
           protected, to allow such devices to be imaged by third party expert witness Allison
7          Goodman of eDiscovery, Inc. ("eDiscovery") to preserve evidence, to determine
           whether Parker has further distributed Redapt's confidential information and trade
8          secrets, to identify appropriate third parties to be brought into this action, and to
           avoid further use and disclosure of such information, and requiring such computers
9          to be returned to Parker within 1 business day thereafter, scrubbed of Redapt's
           confidential information and data

10  Dkt. 5, at 2–3.

11          Redapt further requests that Parker and non-parties to this action be required to preserve

12  evidence and that Parker be required to show cause why a preliminary injunction should not

13  issue.  Dkt. 5, at 3.

14          In support of its motion, Redapt has provided declarations from Malmstrom (the Chief

15  Financial Officer and Chief Operating Officer of Redapt), Jason Morgan (the Redapt IT

16  director), Marcia Ellsworth (a Redapt attorney), and Allison Goodman, Redapt's imaging expert.

17  *See* Dkts. 5–9.

18                                     **DISCUSSION**

19  ### I.  TRO Procedure

20          The Court by local rule disfavors TROs without notice and an opportunity to be heard by

21  the adverse party.  *See* Local Civil Rule ("LCR") 65(b)(1).  Nonetheless, an *ex parte* TRO may

22  be issued—without waiting for a response from the opposing party—if the conditions set forth in

23  Federal Rule of Civil Procedure 65(b) are satisfied.  Those conditions are that "specific facts in

24

an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss or damage will result to the movant before the adverse party can be heard in opposition; and . . . the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65(b)(1).

Here, Redapt has presented persuasive evidence that irreparable injury will occur before a chance for an opposition because Parker copied their confidential information before terminating his employment with Redapt, then scheduled a meeting with top executives of Redapt's competitor for June 5. *See* Dkt. 5, at 8 (Malmstrom declaration). Thus, there is reason to believe that Parker has already or will imminently transfer the CRM database to Redapt's competitors, in violation of the terms of his employment agreement. Dkt. 5, at 8. Moreover, the evidence shows that Parker has "computer expertise" and has lied about his reasons for copying the database, so that he may destroy data, unless the Court enters a restraining order. Dkt. 5, at 8.

Redapt's attorney has also certified in writing efforts made to give notice. *See* Dkts. 9, 11, 13, 14. At the hearing before Magistrate Judge Creatura, Redapt's counsel made clear that it believes that Parker is avoiding service, since despite failing to respond to the email, there is evidence that Parker has accessed the internet in the last few days. *See also* Dkt. 14.

The Court finds that Redapt has adequately shown that *ex parte* consideration of the motion for TRO is appropriate, without waiting for Parker to file an opposition.

**II. TRO Legal Standards**

"A plaintiff seeking a TRO in federal court must meet the standards for issuing a preliminary injunction." *Navigant Consulting, Inc. v. Milliman, Inc.*, No. C18-1154JLR, 2018 WL 3751983, at *3 (W.D. Wash. Aug. 8, 2018) (citing *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001)). A plaintiff seeking a preliminary

1   injunction must establish (1) a likelihood of success on the merits, (2) a likelihood of suffering

2   irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in the

3   plaintiff's favor, and (4) that an injunction is in the public interest.  *Winter v. Nat'l Res. Def.*

4   *Council*, 555 U.S. 7, 20 (2008).  The balance of equities and public interests factors merge when

5   the Government is a party.  *See Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir.

6   2014).

7          A plaintiff may also obtain a preliminary injunction by showing "serious questions going

8   to the merits were raised" (a lesser standard than a likelihood of success) and that "the balance of

9   hardships tips *sharply* in [plaintiff's] favor," if the other elements of the *Winter* test are met.

10  *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131, 1135 (2011) (internal quotation

11  omitted and emphasis added).  However, a preliminary injunction always requires more than a

12  mere possibility of irreparable harm because a preliminary injunction is "an extraordinary

13  remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such

14  relief."  *Winter*, 555 U.S. at 22.

15     **III. TRO Analysis**

16         **A. Likelihood of Success on the Merits**

17         Redapt asserts a likelihood of success on the merits of its claims of violation of the

18  DTSA, violation of state law protecting trade secrets, and breach of contract.  Dkt. 4, at 12–16.

19         The DTSA creates a private cause of action in federal court for trade secret

20  misappropriation.  *See* 18 U.S.C. § 1836(b)(1).  The trade secret must be "related to a product or

21  service used in, or intended for use in, interstate or foreign commerce."  18 U.S.C. § 1836(b)(1).

22  The DTSA is violated if, among other things, someone "with intent to convert a trade secret" "to

23  the economic benefit of anyone other than the owner thereof, and intending or knowing that the

24

1    offense will, injure any owner of that trade secret, knowingly" "without authorization copies,

2    duplicates, sketches, draws, photographs, downloads, uploads, alters, destroys, photocopies,

3    replicates, transmits, delivers, sends, mails, communicates, or conveys such information[.]"  18

4    U.S.C.A. § 1832(a)(2).

5         Similarly, under Washington state law, a trade secret is "misappropriated" if it is acquired

6    "by a person who knows or has reason to know that the trade secret was acquired by improper

7    means." RCW 19.108.010(2).  Improper means "includes theft."  RCW 19.108.010(1).  "The

8    Washington Supreme Court has held that customer contact information, whether retained only in

9    an employee's memory or in a compilation of notes or business cards, can constitute a trade

10   secret." *Pac. Aerospace & Elecs., Inc. v. Taylor*, 295 F. Supp. 2d 1188, 1200 (E.D. Wash. 2003)

11   (citing *Nowogroski Ins., Inc. v. Rucker*, 137 Wn.2d 427, 437, 440 (1999)).

12        Here, Redapt has provided affidavits and evidence in support of its motion from which it

13   appears that Parker accessed and copied the CRM with an illicit motive, intending to use the

14   CRM, which is valuable, to his own ends; that such would be harmful to Redapt's business; and

15   that the CRM pertains to interstate services.  "Customer information such as sales history and

16   customer needs and preferences constitute trade secrets." *Henry Schein, Inc. v. Cook*, 191 F.

17   Supp. 3d 1072, 1077 (N.D. Cal. 2016) (citing *MAI Sys. Corp. v. Peak Computer, Inc.*, 991 F.2d

18   511, 521 (9th Cir. 1993)).  Moreover, Redapt has provided evidence from which it could be

19   determined that Parker stole the customer database in violation of the Washington law against

20   trade secret misappropriation.  The timing of Parker's actions, including setting up meetings with

21   Redapt's competitor, is strong circumstantial evidence that Parker copied the CRM database with

22   the intent to offer confidential information to Redapt's competitors.  It should also be noted that

23   Redapt has provided evidence that it has already lost at least one employee to the competitor

24

1  with whom Parker was meeting and that Redapt has sent a cease-and-desist letter to the

2  competitor to stop recruiting former Redapt employees who have restrictive covenants in their

3  employment agreements.  *See* Dkt. 5, at 5–6.

4        Redapt has also provided a contract signed by Parker in which he agreed not to "at any

5  time directly or indirectly . . . during the term of this Agreement or after termination of this

6  Agreement for any reason . . . use Confidential Information [including customer lists] of the

7  Company . . . for Employee's own benefit or that of any other person or entity; or . . . disclose

8  Confidential Information of the Company or any Affiliated Entity to any person or entity without

9  the express prior written consent of the Company."  Dkt. 5-2, at 1–2.  This supports Redapt's

10  claim that Parker's attempts to share the CRM database would breach his contract with Redapt.

11        Based on the evidence submitted by Redapt in support of its TRO, therefore, the Court

12  finds that there is a likelihood of success on the merits.  *Accord Henry Schein, Inc.*, 191 F. Supp.

13  3d at 1077 ("Plaintiff has alleged that Defendant e-mailed and downloaded, to her personal

14  devices, confidential information from HSI before leaving her employment to work at a

15  competitor.  It has also provided copies of a Confidential and Non-Solicitation Agreement and a

16  Letter Agreement with provisions for confidentiality and non-solicitation, both of which appear

17  to be signed by Cook. . . .  In light of these contentions, the Court concludes that Plaintiff is

18  likely to succeed on the merits."); *see also Navigant Consulting, Inc.*, 2018 WL 3751983, at *4.

19              **B.  Likelihood of Irreparable Harm in the Absence of Injunctive Relief**

20        Redapt asserts that it faces a likelihood of irreparable harm from Parker's possession of

21  its proprietary information since there is a likelihood that Parker will use that information,

22  including providing it to a competitor, which will result in "losing clients, profit margin, revenue,

23

24

and Parker's (and likely [the competitor's]) unlawful possession of Redapt's proprietary

information."  Dkt. 4, at 16.

"'[E]vidence of threatened loss of prospective customers or goodwill certainly supports a

finding of the possibility of irreparable harm.'"  *Henry Schein, Inc.*, 191 F. Supp. 3d at 1077

(quoting *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 841 (9th Cir. 2001)).

Such harms would also be irreparable:  the proverbial cat is out of the bag once Parker gives the

proprietary customer information to a competitor, an event that is not unlikely to happen before

Parker can be heard in opposition.  *Accord Schein*, 191 F. Supp. 3d at 1077.

### C.  The Balance of the Equities Tips in Redapt's Favor

Redapt asserts that the balance of the equities factor favors it because "Redapt seeks to

protect its proprietary business information, whereas Parker will suffer no harm or prejudice

from preserving the *status quo ante* [and] from the examination of his computer."  Dkt. 4, at 16.

The Court agrees that there is no harm that will occur from preventing Parker from distributing

or possessing the CRM database or destroying evidence material to this matter in the brief period

covered by the TRO.  *See also Henry Schein, Inc.*, 191 F. Supp. 3d at 1077 (Finding that no

undue hardship occurs where a party is enjoined from engaging in improper activities); *Navigant

Consulting, Inc.*, 2018 WL 3751983, at *4 ("Navigant seeks to protect its proprietary business

information, whereas Defendants will suffer minimal prejudice from preserving the status quo.").

"[T]he Ninth Circuit has often compressed this analysis into a single continuum where the

required showing of merit varies inversely with the showing of irreparable harm."  *Amazon.com,

Inc. v. Moyer*, No. C19-1176 RSM, 2019 WL 5455724, at *4 (W.D. Wash. Oct. 24, 2019) (citing

*Prudential Real Estate Affiliates, Inc. v. PPR Realty, Inc.*, 204 F.3d 867, 874 (9th Cir. 2000)).

### D.  Public Interest

Redapt argues that preventing theft of trade secrets is in the public interest.  Dkt. 4, at 17.
The Court agrees:  "the public interest is served when defendant is asked to do no more than
abide by trade laws and the obligations of contractual agreements signed with her employer.
Public interest is also served by enabling the protection of trade secrets."  *Henry Schein, Inc.*,
191 F. Supp. 3d at 1078 (citing *Bank of Am., N.A. v. Lee*, No. CV 08–5546 CAS(JWJX), 2008
WL 4351348, at *7 (C.D. Cal. Sept. 22, 2008)).

In sum, the Court finds that each of the TRO factors weighs in favor of granting a TRO
preventing Parker from disclosing or using the CRM database.

Redapt also seeks to have Parker ordered to deliver his computer and devices to the Court
or to Redapt's counsel for imaging.  In response to questioning at the *ex parte* hearing by
Magistrate Judge J. Richard Creatura, Redapt's counsel represented that he is unaware of
authority supporting that such directives would be appropriate in a TRO.  *See* Email from Mike
Callan to Deputy Clerk Kelly Miller (June 11, 2020, at 3:01 p.m. P.S.T.) (on file with the Court).
Indeed, courts have found to the contrary.  In a published ruling, the Northern District of
California refused to order that defendant provide "a 'clone' or 'mirror image' of data in [her]
personal e-mail accounts, her personal iPad, iPhone, computers, other mobile devices, and any
other computer storage drives," finding that such was inappropriate in a TRO without first
providing defendant "an opportunity to respond to [p]laintiff's contentions."  *Henry Schein, Inc.*,
191 F. Supp. 3d at 1078.  As the Court reasoned in that matter, Parker is already obligated "to
avoid altering, damaging, or destroying any evidence, electronic or otherwise, that is related to
this litigation" and may face penalties such as sanctions for doing so.  *Id.*  Therefore, the Court
declines to order Parker to turn over devices at this juncture.

1   In addition, Redapt seeks to have third parties—namely former Redapt employees Matt

2   O'Donnell, Brian O'Donnell, Brandon Gross, and Hannah de Regt—ordered to preserve all

3   evidence pertaining to this matter.  Redapt has provided the Court with no authority that a

4   temporary restraining order may bind named persons who are not parties to the action.  However,

5   the applicable rule specifically provides that the TRO may apply to those who have actual notice

6   by personal service or otherwise and who are a party's officer, agent, servant, employee, or

7   attorney or are acting in "active concert or participation with" a party.  *See* Fed. R. Civ. P.

8   65(d)(2).  Therefore, this TRO is binding on any such person who has or may have access to the

9   information, devices, or materials that are the subject of this order and who received actual

10   notice of this Order.

11   To the extent that Redapt seeks to have an order requiring preservation of evidence, the

12   Court further orders that Parker and any person described under Fed. R. Civ. P. 65(d) preserve

13   documents, data, and other materials related to this case and not alter, destroy, or dispose of

14   evidence or materials related to this case, in accordance with Fed. R. Civ. P. 26(a) and 37(e).

15   *Accord Henry Schein, Inc.*, 191 F. Supp. 3d at 1078.

16   **IV.  No Bond Required**

17   Finally, the Court considers whether to require Redapt to pay a bond.  *See* Fed. R. Civ. P.

18   65(c).  Generally, courts may grant a TRO "only if the movant gives security in an amount that

19   the court considers proper to pay the costs and damages sustained by any party found to have

20   been wrongfully . . . restrained."  Fed. R. Civ. P. 65(c).  A district court "may dispense with the

21   filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from

22   enjoining his or her conduct."  *Navigant Consulting, Inc.*, 2018 WL 3751983, at *4.

23

24

Here, enjoining Parker from disseminating information that he should not have does not cause a realistic likelihood of harm in the next 14 days, and therefore no bond is required at this time.  This ruling is entered without prejudice, should Parker wish to address the requirement of a bond, once Parker has appeared and responded.

**CONCLUSION**

For the foregoing reasons and subject to the following revisions, the court GRANTS Redapt's motion for a TRO.  *See* Dkt. 4.

(1)   Parker shall not disclose or use Redapt's CRM database or any other confidential information and trade secrets in any way;

(2)   Parker is ordered to preserve all evidence relevant to the allegations in the Complaint, wherever located, including, but not limited to, his mobile phone, text messages, social media messages, and email until further ordered.  Parker shall preserve documents, data, and other materials related to this case and shall not alter, destroy, or dispose of materials related to this case, in accordance with Federal Rule of Civil Procedure 26(a) and 37(e).

(3)  Pursuant to Federal Rule of Civil Procedure 65(d)(2), this Order is binding on those persons who receive actual notice of this Order, if those persons are an officer, agent, servant, employee, or attorney of Parker or if they are acting in active concert or participation with Parker.

(4) Parker shall file pleadings showing cause, if any he may have, why he should not be preliminarily enjoined from possessing, disclosing, or using Redapt's confidential information and trade secrets.

(5)  The request for preliminary injunction is set for hearing on June 22, 2020.

Parker shall file a response on or before June 17, 2020.  Redapt may file a reply in

support of the request for a preliminary injunction on or before June 19, 2020.

(6)  Unless extended by the Court, this TRO expires fourteen days from entry.

Dated this 11th day of June, 2020.

JAMES L. ROBART
United States District Judge

Recommended for Entry
this 11th day of June, 2020.

J. Richard Creatura
United States Magistrate Judge

ORDER GRANTING MOTION FOR TEMPORARY
RESTRAINING ORDER - 14